UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                            Plaintiff,

             v.

ROBERT W. MORAN,

                      Defendant.

_____

REPORT & RECOMMENDATION

11-CR-6083CJS

## PRELIMINARY STATEMENT

By Order of Hon. Charles J. Siragusa, United States District Judge, dated April 29, 2011, all pretrial matters in the above-captioned case were referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 2).

Defendant Robert Moran ("Moran") has been charged in two counts of a five-count indictment with conspiring with others in the Hells Angels' Motorcycle club to commit assault with a dangerous weapon in aid of racketeering activity and with the related substantive offense, in violation of 18 U.S.C. §§ 1959(a)(3) and (a)(6).  (Docket # 1). Specifically, the indictment alleges that on May 31, 2006, at Spenders Bar in Rochester, New York, Moran beat one of the bar's patrons with a baseball bat.  (*Id.*).

Currently pending before the Court is Moran's motion to suppress evidence of a photographic identification.  (Docket # 52).  On October 24, 2011, this Court conducted a *Wade* hearing relating to that identification.[1]  (Docket # 86).  For the reasons discussed below, I

_____

[1]  The October 24, 2011 hearing was digitally recorded, but no transcript has been prepared.  This Court has reviewed the digital recording of the hearing in connection with the preparation of this Report and Recommendation.

recommend that the district court deny Moran's motion to suppress the photographic

identification.


## FACTUAL BACKGROUND

Jean LaPlace, Jr. ("LaPlace"), a Special Agent with the Federal Bureau of

Investigation ("FBI"), testified that he has been an FBI agent for sixteen years and has worked in

the Minneapolis, Minnesota office for the last six years.  LaPlace testified that sometime in May

2007, he received a request from the FBI's Rochester office to interview an individual residing in

Minnesota who was an eyewitness to the May 31, 2006 assault at Spenders Bar.  LaPlace was

asked to gather information from the witness about the events that took place at the bar on May

31, 2006, advised that the witness might be able to identify persons who had been present at the

bar that night and instructed to show the witness a photographic array.

LaPlace contacted the witness and arranged a meeting for May 18, 2007.  That

day, he interviewed the witness at the witness's residence in the presence of the witness's spouse.

The witness informed LaPlace that after the assault on May 31, 2006, the police had brought

eight or nine individuals to the bar, but he had not identified any of those individuals as the

assailant.  LaPlace handed the witness a manila envelope containing a six-person photographic

array that had been prepared by the Rochester FBI office.[2]  LaPlace told the witness to remove

the array, review it and advise him if the witness recognized anyone.  The witness reviewed the

array and identified the person depicted in the fifth photograph as the person who carried the bat

---

[2] LaPlace testified that he showed the witness two arrays, the second of which is at issue in this motion.

during the assault.[3]  The witness placed his initials and the date on the array underneath the fifth

photograph.  LaPlace also signed and dated the array.

       LaPlace testified that neither he nor the witness knew the name of the person in

the fifth photograph.  LaPlace further testified that he was not aware at the time of the

identification that the person depicted in that photograph was a suspect in this case.  LaPlace did

not know if the witness had been shown any other photo arrays or had been provided with any

descriptions of the alleged assailant prior to the meeting with LaPlace.  LaPlace was also

unaware whether any law enforcement agencies had contacted the witness before the May 18,

2007 interview.

       After the testimony was concluded, this Court permitted the government to submit

a supplemental affidavit regarding the subject of contacts between the witness and any law

enforcement agents during the period May 31, 2006 through May 18, 2007.  On December 2,

2011, the government filed an affidavit sworn by FBI Special Agent Michael Preisser

("Preisser"), the case agent.  (Docket # 101).  In his affidavit, Preisser stated that he was "aware

of no contact between the FBI or any other law enforcement agency assigned to this investigation

and the [witness] between May 31, 2006, and May 18, 2007."  (*Id*. at ¶ 3).  Preisser further

affirmed that he was not aware of any other photographic identification procedures during that

time period.  (*Id*.).  Finally, Preisser affirmed that the witness had recently told another agent that

the witness had had no contact with any law enforcement agency since the night of the assault on

---

[3]  For the purposes of this hearing, Moran did not contest that he is the individual depicted in the fifth
photograph.

May 31, 2006 until the contact by LaPlace and that LaPlace was the only law enforcement agent who showed him any photographs related to the assault.  (*Id*. at ¶ 4).

Counsel for Moran did not request the opportunity to cross-examine Preisser on his affidavit, nor did he make any further submissions following the filing of Preisser's affidavit.


## **DISCUSSION**

Evidence of an out-of-court photographic identification will be suppressed under the due process clause if "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).  In determining whether to exclude evidence of a pretrial identification, a court must first consider whether the identification procedure was unduly suggestive.  If so, the court must then determine whether the identification nevertheless possesses "sufficient aspects of reliability."  *United States v. Bubar*, 567 F.2d 192, 197 (2d Cir.) (citing *Manson v. Brathwaite*, 432 U.S. 98, 109-17 (1977)), *cert. denied*, 434 U.S. 872 (1977).  "Even if the procedure was unnecessarily (or impermissibly) suggestive . . .[,] a district court may still admit the evidence 'if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.'"  *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir.) (footnote omitted) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919 (1991)), *cert. denied*, 513 U.S. 862 (1994).

On the record before the Court, I find that the identification procedure at issue was not suggestive.  The witness was shown a six-photograph array, rather than a single photograph, and was asked only to identify anyone whom the witness recognized from the assault on May 31,

4

2006.  Moran's photograph, like the others in the array, is a frontal image from the neck to the top of his head.  All of the men depicted appear to be of similar age and coloring and have similar facial features and hairstyles; none has facial hair.  (G. Ex. 1).  *See United States v. Thai*, 29 F.3d 785, 809 (2d Cir.) (array was not unduly suggestive where array contained photographs of men with a wide variety of hairstyles and with and without facial hair), *cert. denied*, 513 U.S. 993 (1994); *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990) ("[t]he fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents"), *cert. denied*, 501 U.S. 1233 (1991); *United States v. Marrero*, 705 F.2d 652, 655 n.5 (2d Cir. 1983) (six is an acceptable number for a photographic array); *United States v. Joseph*, 332 F. Supp. 2d 571, 582 (S.D.N.Y. 2004) (photographic array was not unduly suggestive where array contained six photographs of individuals of similar ethnicity, age, hairstyle and facial hair).  Thus, I do not find that Moran's photograph "so stood out from all the other photographs as to 'suggest to an identifying witness that [that person] was more likely to be the culprit.'"  *United States v. Thai*, 29 F.3d at 808 (quoting *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986)).

At the hearing, Moran argued that the record contained insufficient evidence to determine whether the procedure was suggestive because the government had provided no information concerning whether the witness had had any contact with law enforcement between the night of the assault and his interview by LaPlace.  Preisser's supplemental affidavit establishes that no such contacts occurred.  Accordingly, I do not find that the identification procedure on May 18, 2007 was impermissibly suggestive and recommend that Moran's motion to suppress be denied.

## <u>CONCLUSION</u>

For the reasons stated above, I recommend that the district court deny Moran's motion to suppress evidence of the out-of-court identification procedure conducted on May 18, 2007.  (Docket # 52).

<div align="center" style="margin-left:50%">

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

</div>

Dated: Rochester, New York
       February    6   , 2012

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[4]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

<div style="text-align:right">

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

</div>

Dated: Rochester, New York
      February   6  , 2012

---

[4] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).