UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                    Plaintiff,                           <u>REPORT & RECOMMENDATION</u>

          v.                                            11-CR-6083CJS

ROBERT W. MORAN, GINA TATA,
TIMOTHY M. STONE, DONNA BOON,
GORDON MONTGOMERY and
JEFFREY A. TYLER,

                    Defendants.
_____


## <u>PRELIMINARY STATEMENT</u>

By Order of Hon. Charles J. Siragusa, United States District Judge, dated May 2,

2011, all pretrial matters in the above captioned case have been referred to this Court pursuant to

28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 2).  Currently pending before this Court for Report

and Recommendation are several motions claiming misjoinder and/or seeking severance that

have been filed by defendants Robert W. Moran, Jr. ("Moran"), Gina Tata ("Tata"), Timothy M.

Stone ("Stone"), Donna Boon ("Boon"), Gordon L. Montgomery ("Montgomery") and Jeffrey A.

Tyler ("Tyler") (collectively, "defendants").[1]  (Docket ## 209, 211, 212, 277, 312, 337, 345).

For the following reasons, I recommend that defendants' motions be denied.

_____

[1] In addition to these motions, the remaining co-defendants, James Henry McAuley, Jr. ("McAuley"),
Richard W. Mar ("Mar") and Richard E. Riedman ("Riedman"), also have filed motions claiming misjoinder and/or
seeking severance.  (Docket ## 201, 216, 234).  Mar's motion for severance and/or misjoinder was withdrawn
without prejudice to renewal before the trial court during oral argument on June 26, 2012.  (Docket # 227).
McAuley's motion was denied without prejudice to renewal before the trial court during oral argument on August 14,
2012.  (Docket # 266).  Riedman's motion will be addressed in a separate Report and Recommendation.  In addition
to these motions, all remaining defendants have filed additional motions that either have been decided by this Court
or are pending decision.  Those other motions are not addressed by this opinion.

## BACKGROUND

On February 16, 2012, the Grand Jury returned a seven-count superseding indictment against McAuley, Mar, Boon, Riedman, Montgomery, Tyler, Moran, Tata, Stone and Paul S. Griffin[2] ("Griffin"). (Docket # 126). The first two counts of the superseding indictment charge narcotics offenses involving the possession and distribution of methamphetamine. (*Id.* at 2-3). Specifically, Count One charges McAuley, Mar, Boon, Riedman, Montgomery, Tyler and Griffin with conspiring during the period 2002 through 2010 to possess with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. § 846. (*Id.* at 2). Count Two charges Boon with possessing with intent to distribute and distributing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. (*Id.* at 3). For ease of reference, Counts One and Two will be referred to as the "narcotics counts."

The remaining four charges in the superseding indictment arise from an assault that occurred on May 31, 2006, and its alleged relationship to the Hell's Angels Motorcycle Club, Rochester Charter ("Hell's Angels"), a purported enterprise within the meaning of the racketeering statute. (*Id.* at 3-10). Specifically, defendants McAuley, Moran, Riedman, Stone and Tata are alleged to have been members of or associated with the Hell's Angels. (*Id.* at 3-4, ¶¶ 1-4). Count Three of the superseding indictment charges McAuley, Moran and Tata with assault with a dangerous weapon in aid of racketeering activity, in violation of the violent crimes in aid of racketeering statute ("VICAR"), 18 U.S.C. § 1959(a)(3) and 18 U.S.C. § 2. (*Id.* at 6, ¶ 8). Count Four of the superseding indictment charges Moran and Tata with conspiracy to commit the VICAR assault, in violation of 18 U.S.C. § 1959(a)(6), and Counts Five, Six and

---

[2] Griffin pled guilty to the charge against him and was sentenced on March 25, 2013. (Docket # 392).

Seven charge Tata, Riedman and Stone, respectively, with being accessories after the fact to the VICAR assault and conspiracy, in violation of 18 U.S.C. § 3. (*Id.* at 7-10). For ease of reference, these five charges will be referred to as the "VICAR counts."

Among other things, the superseding indictment alleges that on May 31, 2006, Moran assaulted a patron of Spenders Bar in Rochester, New York by beating him with a baseball bat, aided and abetted by McAuley and Tata. (*Id*. at 7-8, ¶¶ 2-3). The indictment further alleges that after the assault, Tata, Riedman and Stone assisted the perpetrators by attempting to prevent their apprehension. (*Id.* at 9-10). The indictment further alleges that the Hell's Angels engaged in racketeering activities – namely, unspecified narcotics trafficking and acts involving murder. (*Id.* at 6, ¶ 7).

## DISCUSSION

### I.  Misjoinder

Rule 8(b)[3] of the Federal Rules of Criminal Procedure provides that two or more defendants may be joined in the same indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The Second Circuit has interpreted the phrase "same series of acts or transactions" to sanction joinder "where two or more persons' criminal acts are 'unified

---

[3]  Rule 8(a) addresses the joinder of offenses, while Rule 8(b) addresses the joinder of defendants. When a case involves multiple defendants facing multiple charges, the validity of joinder is analyzed under Rule 8(b). *See United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988) ("when a defendant in a multiple-defendant case challenges joinder of offenses, his motion is made under 8(b) rather than 8(a)") (internal quotations omitted) (quoting *United States v. Papadakis*, 510 F.2d 287, 300 (2d Cir.), *cert. denied*, 421 U.S. 950 (1975)); *see also United States v. Burke*, 789 F. Supp. 2d 395, 397 (E.D.N.Y. 2011) ("it is well-settled that while a movant in a multi-defendant and multi-offenses case may move for a severance under either Rule 8(a) or Rule 8(b), Rule 8(b) is the governing rule when a movant seeks severance from co-defendants").

by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.'"

*United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (quoting *United States v. Cervone*,

907 F.2d 332, 341 (2d Cir. 1990), *cert. denied*, 498 U.S. 1028 (1991)), *cert. denied*, 129 S. Ct.

1391 (2009).  Thus, "[a] 'series' exists if there is a logical nexus between the transactions."

*United States v. Joyner*, 201 F.3d 61, 75 (2d Cir. 2000), *clarified on reh'g in part*, 313 F.3d 40

(2d Cir. 2002), *cert. denied*, 540 U.S. 1201 (2004).

Whether joinder is proper in a particular matter is a question of law to be

determined on a case-by-case review of the allegations of the indictment.  *See United States v.*

*Rittweger*, 524 F.3d at 178 & n.3 ("whether the joinder of defendants in two conspiracies is

warranted must be determined on a case-by-case basis[,] . . . [and] the decision to join parties

turns on what is 'alleged' in the 'indictment'") (quoting Fed. R. Crim. P. 8(b)); *United States v.*

*Galietti*, 2007 WL 3231694, *2 (D. Conn. 2007) ("[w]hether joinder is proper is a question of

law that depends on the allegations in the indictment").  When making this evaluation, the court

should apply a "commonsense rule to decide whether, in light of the factual overlap among

charges, joint proceedings would produce sufficient efficiencies such that joinder is proper

notwithstanding the possibility of prejudice to either or both of the defendants resulting from the

joinder."  *Rittweger*, 524 F.3d at 177 (quoting *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir.

2007)).

Boon, Montgomery and Tyler[4] (hereinafter, "the narcotics defendants"), who have

been charged only in the narcotics counts, assert that the narcotics charges against them have

---

[4] Montgomery's and Tyler's motion papers are unclear as to whether they are asserting misjoinder under Rule 8(b) or are merely seeking severance under Rule 14(a).  (Docket ## 312, 345).  In the interest of completeness, the Court will interpret their motions to raise both issues.

been improperly joined with the VICAR counts.  (Docket # 312 at 10-14; # 337 at 3-9; # 345 at 15-18).  Similarly, Tata, Stone[5] and Moran (hereinafter, the "VICAR defendants"), who have been charged only in the VICAR counts, assert that they have been improperly joined with the narcotics defendants.[6]  (Docket ## 209, 211, 212).

According to the narcotics defendants, the narcotics counts and the VICAR counts are insufficiently connected to permit the two sets of charges to be joined in a single prosecution. (Docket # 337 at 4).  The narcotics defendants contend that they are improperly joined with the VICAR defendants because the indictment does not allege that they are members of the Hell's Angels enterprise and because there is no logical connection between the facts underlying the narcotics charges and the assault that forms the basis for the VICAR counts.  (Docket # 312 at ¶¶ 23-25).  The absence of any connection, according to the narcotics defendants, is underscored by the fact that none of the defendants who have been charged in Count One, the narcotics conspiracy, are also charged in Count Four, the VICAR conspiracy.  (Docket # 337 at 4, ¶¶ 27-28).  Thus, the narcotics defendants argue, the two conspiracies are unrelated and should not be tried in the same prosecution.

---

[5]  Although Stone's motion papers did not explicitly assert misjoinder under Rule 8(b), the Court granted Stone's counsel's request at oral argument on July 12, 2012, to join in the misjoinder motions filed by Moran and Tata.

[6]  Moran contends that Counts Three and Four (the VICAR assault and conspiracy counts) are improperly joined, not only with the narcotics counts (Counts One and Two), but also with the accessory-after-fact counts (Counts Five, Six and Seven).  (Docket # 211 at 1).  To the extent that Moran argues that the accessory-after-fact charges are improperly joined with the VICAR assault and conspiracy charges, I conclude that such arguments are wholly unavailing.  *See United States v. Volpe*, 42 F. Supp. 2d 204, 213 (E.D.N.Y. 1999) (holding accessory, obstruction and false statement charges properly joined with assault-related charges because "all of the charges are part of the 'same series of acts or transactions'").

According to the VICAR defendants, the charges in the indictment involve two distinct cases, one involving narcotics (Counts One and Two) and the other involving the assault (Counts Three through Seven). (Docket # 212-1 at 3). Only two of the seven defendants charged in the narcotics counts are also charged in the VICAR counts. (*Id.*). The VICAR defendants argue that the two cases are improperly joined because they involve crimes that occurred at different times, involved substantially different participants, and lack a common factual basis. (*Id.* at 5-6; Docket # 211-1 at 5-7). Further, the VICAR defendants maintain that in the absence of any allegations to suggest that Tata, Stone or Moran knew of the narcotics scheme or shared its objectives, the VICAR and narcotics counts are improperly joined. (Docket # 211-1 at 7-8; # 212-1 at 5-6).

The government contends that the narcotics counts are properly joined with the VICAR counts. (Docket # 232 at 4-6; # 341 at 4-5). According to the government, an essential element of the VICAR counts requires proof that the enterprise engaged in racketeering activity; in this case, the indictment specifically alleges that the Hell's Angels enterprise engaged in narcotics trafficking. (Docket # 232 at 5; # 126 at 6, ¶ 7). Thus, because the narcotics offenses are encompassed within the racketeering activity supporting the VICAR charges, they are properly joined, the government argues.

Having carefully reviewed the allegations of the indictment, I conclude that the narcotics defendants are properly joined with the VICAR defendants and that the VICAR defendants are properly joined with the narcotics defendants because all of the counts alleged in the superseding indictment are logically connected. The narcotics counts are properly joined with the VICAR counts because the narcotics offenses constitute the racketeering activity

6

engaged in by the enterprise sought to be promoted by the alleged assault. *See United States v. Weisman*, 624 F.2d 1118, 1129 (2d Cir.) (charges of bankruptcy fraud against one defendant properly joined with RICO charges against another defendant where bankruptcy fraud charges were predicate acts in RICO offense; "a construction of Rule 8(b) that required a closer relationship between transactions than that necessary to establish a 'pattern of racketeering activity' under RICO might possibly prohibit joinder in circumstances where Congress clearly envisioned a single trial"), *cert. denied*, 449 U.S. 871 (1980), *abrogation on other grounds recognized by Ianniello v. United States*, 10 F.3d 59 (2d Cir. 1993); *United Sates v. Cervone*, 907 F.2d at 341 (defendant charged with bribery was properly joined in indictment charging other defendants with RICO conspiracy where bribery charge constituted predicate racketeering act); *United States v. Burke*, 789 F. Supp. 2d at 398 ("[defendant's] argument that there is no logical connection justifying Rule 8(b) joinder is unavailing[;] . . . [defendant] is charged with the substantive offenses that form the basis for one count of racketeering against [his co-defendant]"); *United States v. Galietti*, 2007 WL 3231694 at *3 ("[w]hen an indictment alleges a pattern of acts as a violation of the RICO statute, those predicate acts are also properly charged as separate counts in the indictment"); *United States v. Rastelli*, 653 F. Supp. 1034, 1042 (S.D.N.Y. 1986) (counts are properly joined where "the acts alleged in the[] counts are part of the activity of the enterprise charged in the RICO count"); *United States v. Persico*, 621 F. Supp. 842, 851 (S.D.N.Y. 1985) ("a RICO charge provides the unifying link among the substantive crimes making up a pattern of racketeering activity for purposes of their joinder under Rule 8(b) . . . [because] [t]he racketeering counts almost by definition constitute a series of act or

transactions sufficiently intertwined to permit a joint trial of all defendants under Rule 8(b)") (internal quotation omitted).[7]

Contrary to the contentions of the narcotics defendants, the fact that they are neither alleged to be members of the Hell's Angels enterprise nor charged in the VICAR counts does not necessarily render the narcotics counts improperly joined. *See*, *e.g.*, *Cervone*, 907 F.2d at 341 (defendant was properly joined even though "[h]e was not charged in the RICO conspiracy count or in any of the underlying racketeering acts, and he was the only one of the eighteen defendants not charged jointly in *any* count in the indictment with a defendant named in the RICO count"); *United States v. Weisman*, 624 F.2d at 1129 (defendant charged with fraud properly joined even though he was not indicted on the RICO count because Rule 8(b) "specifically provides that 'all of the defendants need not be charged in each count'") (quoting Fed. R. Crim. P. 8(b)); *Burke*, 789 F. Supp. 2d at 398 ("[i]n this Circuit it is well-settled that joinder is appropriate pursuant to Rule 8(b) when, as is the case here, a defendant in a RICO indictment is charged only with the predicate acts as independent offenses and not with violating the RICO statute"); *Galietti*, 2007 WL 3231694 at *3 (joinder of defendant proper even though he was not alleged to be part of the enterprise and was not charged in any of the racketeering counts because "defendants who are charged only in the counts separately charging the predicate racketeering acts, and who are not charged in the racketeering counts, are properly joined under Rule 8"); *United States v. Locascio*, 357 F. Supp. 2d 536, 542 (E.D.N.Y. 2004) ("joinder under

---

[7] Although these cases analyze joinder of counts involving RICO charges as opposed to VICAR charges, the same analysis applies to both types of charges. *See United States v. Barbeito*, 2010 WL 2369907, *2 (S.D. W. Va. 2010) ("[t]he same general severance rules apply in cases under 18 U.S.C. § 1962 (RICO) and § 1959 (VICAR)"); *United States v. Tisdal*, 2009 WL 1427397, *2 (D. Kan. 2009) ("[t]he analysis regarding the V[I]CAR statute is also applicable to the substantive and conspiracy RICO charges[;] RICO and the VICAR statute are similar, and the same body of law applies to both").

Rule 8(b) is proper where a defendant, although not charged in the RICO count itself, is charged in substantive offenses which also serve as predicate acts in the RICO count"). Further, the fact that non-movant defendants McAuley and Riedman are the only defendants who are alleged to have participated both in the narcotics conspiracy and the VICAR assault to promote the Hell's Angels enterprise does not render the counts improperly joined. *See Weisman*, 624 F.2d at 1128 ("Rule [8(b)] specifically provides that 'all of the defendants need not be charged in each count' and this language has generally been construed to permit joinder in cases where individual defendants are charged with some but not all counts of the indictment") (quoting Fed. R. Civ. P. 8(b)); *United States v. Mancuso*, 2008 WL 2884397, *7 (E.D.N.Y. 2008) ("the fact that [the movant] is not charged in any counts with [the RICO defendants] is of no independent significance"); *United States v. Persico*, 621 F. Supp. at 851 ("each defendant is not charged in every count of the indictment[;] Rule 8(b), however, expressly provides that all defendants need not be charged in each count") (internal quotation omitted).

## II.  Severance

Even if an indictment properly joins multiple counts and defendants, the court has discretion under Federal Rule of Civil Procedure 14(a) to sever charges or defendants "if failure to do so would prejudice the defendant." *Cervone*, 907 F.2d at 341. Specifically, Rule 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . . , the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

"There is a preference, in the federal system, for defendants who are indicted together to be tried together." *United States v. Diaz*, 176 F.3d 52, 102 (2d Cir.) (citing *Zafiro v. United States*, 506 U.S. 534, 537 (1993)), *cert. denied*, 528 U.S. 957 (1999). Accordingly, to establish that severance is appropriate, the defendant must meet a "heavy burden." *United States v. Sotomayor*, 592 F.2d 1219, 1227 (2d Cir.), *cert. denied*, 442 U.S. 919 (1979)); *see also United States v. Llenas*, 1993 WL 30949, *2 (S.D.N.Y. 1993) ("[i]n order to justify a severance of counts and separate trials . . . , the defendant has the heavy burden of establishing he will be so severely prejudiced that in effect he would be denied a fair trial") (internal quotation omitted). Specifically, a defendant must demonstrate "substantial prejudice," *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991), that is, prejudice "sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir.), *cert. denied*, 525 U.S. 988 (1998); *see also United States v. O'Bryant*, 998 F.2d 21, 25 (1st Cir. 1993) (requiring "strong showing of evident prejudice"). Factors to be considered by the court include the following:

> (i) the complexity of the indictment; (ii) the estimated length of the trial; (iii) disparities in the amount or type of proof offered against the defendants; (iv) disparities in the degrees of involvement by defendants in the overall scheme; (v) possible conflict between various defense theories or trial strategies; and (vi) prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant.

*United States v. Lino*, 2001 WL 8356, *23 (S.D.N.Y. 2001). Ultimately, the court must determine whether the jury will be able to "appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct." *United States v.*

*Kahaner*, 203 F. Supp. 78, 81 (S.D.N.Y. 1962), *aff'd*, 317 F.2d 459 (2d Cir.), *cert. denied*, 375 U.S. 836 (1963).

### A. **The VICAR Defendants**

The VICAR defendants – Moran, Tata and Stone – assert several grounds in support of their contention that the VICAR counts should be tried separately from the narcotics counts. (Docket # 209-1 at 23-24; # 211-1 at 8-9; # 212-1 at 6-8). Moran and Stone contend that the narcotics conspiracy is irrelevant to the VICAR charges and that the introduction of evidence relating to the narcotics conspiracy would result in spillover prejudice. (Docket # 209-1 at ¶¶ 81-83; # 211-1 at ¶¶ 35-36). In addition, Moran and Tata argue that the quantity of proof and number of defendants implicated by the narcotics counts will result in an extended and complex trial, whereas the VICAR counts, by contrast, involve one discrete assault that would require limited proof and a relatively short trial. (Docket # 211-1 at ¶¶ 33-34; # 212-1 at ¶¶ 43-44). Further, Moran argues that evidence relating to narcotics activity that occurred after May 31, 2006, the date of the alleged VICAR assault, would be inadmissible in a separate trial on the VICAR counts. (Docket # 211-1 at ¶ 36). In addition, Tata argues that she could be prejudiced by the introduction of evidence of prior bad acts committed by the narcotics defendants. (Docket # 212-1 at ¶¶ 37-39). Specifically, Tata argues that the government may attempt to elicit evidence relating to McAuley's 2007 conviction for participating in a VICAR conspiracy to commit murder. (*Id.*).

Stone also argues that he will be prejudiced if he is tried together with the other VICAR defendants. (Docket # 209-1 at ¶¶ 76-78, 84). First, Stone contends that introduction of evidence relating to the violent acts attributed to his VICAR co-defendants would result in

spillover prejudice, particularly because he is not a member of the Hell's Angels. (*Id.* at ¶¶ 80, 84). Further, Stone maintains that he will be prejudiced by the introduction of recorded conversations between McAuley and Riedman that implicate Stone in the destruction of a recording of the assault. (*Id.* at ¶¶ 77-79).

The government opposes the VICAR defendants' motion for severance. (Docket # 232 at 6-12). As an initial matter, the government contends that the severance motion is premature. (*Id.* at 3). Second, the government contends that introduction of evidence to support the narcotics counts will not result in spillover prejudice or a longer or more complex trial because such evidence would nonetheless be admissible in a separate trial of the VICAR counts. According to the government, evidence in support of the narcotics counts would be admissible against the VICAR defendants because it is relevant to prove that the Hell's Angels enterprise engaged in racketeering activity, as alleged in the indictment. In any event, according to the government, any potential prejudice could be mitigated by appropriate jury instructions. (*Id.* at 10). Further, the government argues that proof of the activities of the Hell's Angels' enterprise, both before and after the alleged assault, will be relevant and admissible at trial. (*Id.* at 11).

With respect to Stone's arguments, the government maintains that the recordings of McAuley and Riedman would be admissible against him as statements of a co-conspirator under Federal Rule of Evidence 801(d)(2)(E). (*Id.* at 12). Further, the government contends that evidence of both the narcotics activities and the VICAR assault and conspiracy will be admissible in a trial against Stone as an accessory to the VICAR assault. (*Id.*). Finally, the government contends that although Stone is not alleged to be a Hell's Angels member, the indictment alleges that he was associated with the enterprise. (*Id.*).

12

Applying the relevant legal standards, I conclude that the VICAR defendants have failed to demonstrate that they would be substantially prejudiced if the narcotics counts were not severed from the case. As an initial matter, proof of narcotics activity is relevant to establish the existence and nature of the racketeering activity purportedly engaged in by the Hell's Angels enterprise. Moreover, each of the VICAR defendants is alleged to be a member or associate of the Hell's Angels enterprise and, therefore, narcotics trafficking evidence would be admissible against them at a separate trial. *See United States v. DiNome*, 954 F.2d 839, 843 (2d Cir.) (severance based on alleged spillover prejudice not warranted because evidence of criminal acts committed by other co-defendants would be relevant in trial of defendants charged under RICO statute "because it tended to prove the existence and nature of the RICO enterprise . . . [and] was also relevant to prove a pattern of racketeering activity by each defendant"), *cert. denied*, 506 U.S. 830 (1992); *United States v. Cortesiano*, 2012 WL 1450401, *4 (E.D.N.Y. 2012) ("[t]he Second Circuit has repeatedly held that proof of crimes committed by other participants in a RICO conspiracy is relevant to show the existence and nature of the enterprise"); *United States v. Gotti*, 2004 WL 602689, *6 (S.D.N.Y. 2004) ("[e]ven though [movant] is not charged with specific acts such as murder, witness tampering, and other violent crimes, he is alleged to be part of . . . an enterprise that allegedly engaged in a pattern of racketeering activity including the violent acts of his codefendants[;] . . . a separate trial would not shield [the movant] from evidence of his codefendants' acts that are relevant to prove both an enterprise and a pattern of racketeering under RICO"); *United States v. Lino*, 2001 WL 8356 at *24 ("given the common RICO counts against [movants] and their codefendants, all of the evidence that relates to the RICO enterprise is admissible in a severed trial); *United States v. Bellomo*, 954 F. Supp. 630, 650

(S.D.N.Y. 1997) ("courts have held that the inclusion in a joint trial of evidence of more serious acts by other members of a criminal organization does not deny another member of that organization a fair trial").  Accordingly, the VICAR defendants' arguments that the introduction of evidence relating to the narcotics counts would result in spillover prejudice or a drastically expanded trial[8] are unavailing.

In any event, to the extent a joint trial would result in spillover prejudice, such prejudice could be alleviated through the use of appropriate jury instructions.  *See Rittweger*, 524 F.3d at 179 ("the district court gave limiting instructions throughout the trial explaining when evidence could not be considered against a particular defendant, and the jury charge carefully explained that the jurors must consider the case against each defendant separately"); *Cervone*, 907 F.2d at 341 (holding appellants did not demonstrate sufficient prejudice, noting "the court twice delivered a limiting instruction designed to safeguard against the possibility of spillover prejudice"); *United States v. Forde*, 699 F. Supp. 2d 637, 645 (S.D.N.Y. 2010) ("risk of [prejudicial spillover] ... can be mitigated through carefully crafted limiting instructions that warn the jurors to take into account only the evidence admissible against each defendant") (alterations in original) (quoting *United States v. Santiago*, 174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001)); *United States v. Gotti*, 2004 WL 602689 at *4 ("[p]roper limiting instructions by the Court, not a separate trial, are the remedy for varying degrees of evidence against codefendants").

---

[8]  The Court does not interpret the VICAR defendants' severance motion to include an argument that severance is required under *United States v. Casamento*, 887 F.2d 1141 (2d Cir. 1989), *cert. denied*, 495 U.S. 958 (1990), which sets forth guidelines for cases in which the anticipated trial length exceeds four months, particularly if the case involves more than ten defendants.  In any event, reliance on *Casamento* would be unavailing in this case which involves seven counts asserted against nine remaining defendants and which is unlikely to require a more than four-month trial.  Further, this case is still in its pretrial stages and the scope of the case may be narrowed somewhat through stipulations or plea agreements prior to trial.

For the same reasons, Stone's argument that he would be prejudiced by the introduction of evidence relating to the VICAR assault and conspiracy charges against Tata, McAuley and Moran is equally unavailing. *See United States v. Shakur*, 560 F. Supp. 366, 371 (S.D.N.Y. 1983) (holding severance not required where movant was only charged as an accessory after the fact; "[t]his boils down to a problem that can be solved by careful jury instructions").

Similarly, with respect to the remaining arguments that severance is warranted because the admission of certain evidence – including incriminating co-defendant statements, prior bad acts of co-defendants and evidence of criminal activity post-dating the assault – would be unduly prejudicial, I conclude that the VICAR defendants have failed at this stage to demonstrate that severance is appropriate. First, this Court is not persuaded that the recorded statements of Riedman and McAuley would not be admissible as non-hearsay co-conspirator statements in furtherance of the conspiracy. *See United States v. DeVillio*, 983 F.2d 1185, 1193-94 (2d Cir. 1993) (*Bruton* does not preclude admission of co-conspirator statements under Fed. R. Evid. 801(d)(2)(E)).

Further, while evidence of ongoing racketeering activity occurring both before and after the VICAR assault is likely relevant to establish that the Hell's Angels were engaged in racketeering activity at the time of the alleged assault, *see United States v. Barbeito*, 2010 WL 2243878 at *17 n.15 ("[t]he simplest way to demonstrate that the enterprise was engaged in racketeering activity would be to prove that its members committed racketeering acts on its behalf both before and after the VICAR predicate"), the Court does not have adequate information at this stage to determine whether or how much post-assault evidence of racketeering

activity the government will offer and the trial court will admit. For that reason, Tata's arguments regarding potential spillover prejudice based upon the possible admission of her co-defendants' prior bad acts are likewise insufficient to warrant severance at this stage. *See United States v. Otibu*, 2002 WL 1033882, *3 (S.D.N.Y. 2002) (holding argument of spillover prejudice resulting from introduction of prior bad acts of co-defendants "speculative given the fact that the government has not yet sought to introduce any 404(b) material"). Accordingly, this Court recommends that the VICAR defendants' severance motions be denied without prejudice to renewal before the trial court.

### B.  The Narcotics Defendants

The narcotics defendants – Boon, Montgomery and Tyler – assert similar arguments in support of their motions for severance. First, they contend that the VICAR counts should be tried separately because of the risk of spillover prejudice.[9] (Docket # 277 at ¶¶ 138-41; # 312 at ¶¶ 23-24, 29, 31-33; # 345 at ¶¶ 40-43). According to them, a trial of the VICAR counts is likely to include extensive evidence and expert testimony relating to the VICAR defendants' involvement in, and criminal activity related to, the Hell's Angels enterprise. They argue that the introduction of such evidence would significantly prejudice them, as they are not alleged to have been members or associates of the Hell's Angels. Boon and Montgomery assert that the risk of guilt-by-association is heightened for them because Boon is married to McAuley, an alleged member and vice president of the Hell's Angels, and because Montgomery is a longtime friend of the married couple. (Docket # 312 at ¶ 26; # 337 at ¶ 30).

---

[9] Although not entirely clear from his motion papers, Tyler apparently contends that the narcotics conspiracy charge (Count One) should be severed from the narcotics possession charge (Count Two). (Docket # 345 at ¶ 42). To the extent Tyler is asserting that these two counts should be tried separately, I disagree.

Montgomery contends that severance is also warranted to avoid prejudice resulting from the admission of evidence of co-defendants' incriminating statements and prior bad acts.  (Docket # 312 at ¶¶ 22, 28, 30).  In addition, Boon contends that severance is justified required because of "mega-trial concerns" and because she may call her husband, co-defendant McAuley, as a witness in her defense.  (Docket # 277 at ¶ 138).

The government opposes severance of the VICAR counts.  (Docket ## 302, 324, 356).  Again, the government contends that the severance motion is premature.  (Docket # 324 at 14).  Next, the government contends that the narcotics defendants' concerns of spillover prejudice are unfounded because evidence of the VICAR assault, an alleged VICAR murder conspiracy and certain narcotics defendants' membership in or association with the Hell's Angels would be admissible in a separate trial of the narcotics counts.  (Docket # 324 at 18).  According to the government, McAuley, Mar and Boon, who are all charged in the narcotics conspiracy, are either members of or associated with the Hell's Angels.[10]  (*Id.*).  Thus, the government argues, evidence regarding the Hell's Angels and criminal acts committed in aid of the Hell's Angels enterprise would be admissible to explain the narcotics conspiracy and the relationship among the alleged narcotics co-conspirators.  (*Id.*).  Further, Mitchell Austin, a cooperating witness who is expected to testify about the narcotics counts, was involved in the VICAR assault and is likely to be cross-examined about that involvement.  Another cooperating witness expected to testify concerning the narcotics charges, Patrick Lawless, was convicted for his involvement in the VICAR murder conspiracy and is likely to be cross-examined about his participation.  (*Id.*).

---

[10]  The indictment does not specifically allege that Mar or Boon were members of or associated with the Hell's Angels.  (Docket # 126).

With respect to Montgomery's *Bruton* concerns, the government contends that such concerns are premature at this stage of the litigation. (*Id.* at 20). Finally, the government contends that Boon's assertions that she might call McAuley as a testifying witness are speculative. (Docket # 302 at 57).

Although a closer call, my recommendation on the narcotics defendants' severance motions is to deny them at this stage of the prosecution. On the record before me, I find that they have not met their burden of establishing that the potential for spillover prejudice is either sufficiently concrete or substantial to mandate separate trials of the VICAR counts and the narcotics counts. Certainly, in cases such as this, where a defendant is not charged with RICO offenses, but is included in an indictment with defendants who are, many courts have denied severance, while many have determined that separate trials are appropriate. *Compare Cervone*, 907 F.2d at 341-42 (severance not required where movant "was the only defendant charged in the two counts naming him [and] . . . [h]e was not charged in the RICO conspiracy count or in any of the underlying racketeering acts, and he was the only one of the eighteen defendants not charged jointly in *any* count in the indictment with a defendant named in the RICO count" because indictment charged the movant with bribing co-defendant member of racketeering enterprise); *United States v. Forde*, 699 F. Supp. 2d at 644-45 (non-RICO defendant not entitled to severance where he and RICO defendants were charged in a wire fraud conspiracy count and "much of the evidence relating to the racketeering scheme would be admissible as background evidence for the [wire fraud] conspiracy"); *United States v. Muscarella*, 2004 WL 2186561, *9 (S.D.N.Y. 2004) (non-RICO defendants not entitled to severance because they were charged along with the RICO defendants with common conspiracy to commit extortion); *Galietti*, 2007 WL 3231694 at *1, 4-5

18

(severance not required even though movant was not alleged to be "part of the enterprise[,] [was] not charged in any of the racketeering counts[,] [n]or [was] he charged in any of the counts separately charging the racketeering predicate acts as substantive offenses" because he "was allegedly involved in the criminal activities contemporaneously with the RICO defendants, and evidence of their activities [was] relevant to [the] charges against him") *with United States v. DiNome*, 954 F.2d at 844-45 (reversing mail and wire fraud convictions of two defendants tried with RICO co-defendants because RICO-related evidence was "irrelevant yet highly prejudicial in the context of the remaining mail and wire fraud charges"); *Burke*, 789 F. Supp. 2d at 397, 399 (granting severance based upon potential for spillover prejudice where movant was charged with predicate act of witness tampering, but was not alleged to be "part of the criminal enterprise" or "charged with any of the racketeering counts"); *United States v. Locascio*, 357 F. Supp. 2d at 544 (granting severance of defendants who were not charged with RICO violations and were not alleged to be members of the Gambino Crime Family enterprise, noting that in separate trial any "evidence as to organized crime, if admissible at all, would be extremely limited in scope and purpose and would not generate the level of prejudice that would result from a joint trial" in which extensive evidence of alleged organized crime enterprise would be admitted); *United States v. Maisonet*, 1998 WL 355414, *4-5 (S.D.N.Y. 1998) (granting severance motion of non-RICO defendants charged with narcotics conspiracy despite government's argument that the narcotics conspiracy "tie[d] virtually all the defendants together"); *United States v. Bellomo*, 954 F. Supp. at 650-51 (granting severance motion of non-RICO defendants based upon potential for spillover prejudice where joint trial "would include a great deal of evidence about an organized

crime enterprise and its operations which would not be presented at a separate trial and which is not alleged to have been part of their criminal activity").[11]

In this case, the indictment alleges that two of the defendants named in the narcotics conspiracy, McAuley and Riedman, were members or associates of the Hell's Angels. (Docket # 126 at 3, ¶ 1). The government further contends that two other co-conspirators, Mar and Boon, were in fact members of or associated with the Hell's Angels, although not identified as such in the indictment. (Docket # 324 at 18). Thus, the government expects to offer proof that at least four of the seven defendants charged in the narcotics conspiracy were part of the Hell's Angels enterprise. Moreover, the government has represented that its proof on the narcotics conspiracy count will include proof of the "drug trafficking" racketeering activity specified in Count Three of the indictment. (*Id.* at 6).

Crediting these representations, it is reasonable to assume that some evidence of the Hell's Angels enterprise would be admissible in a separate trial of the narcotics counts. *See Forde*, 699 F. Supp. 2d at 644-45 ("much of the evidence relating to the racketeering scheme would be admissible as background evidence for the conspiracy"). The more difficult assessment at this stage is the nature and quantity of such evidence. For this reason, I conclude that it is premature to make the determination now whether separate trials are justified when the decision is better suited for resolution closer to trial when the evidence the government will seek to

---

[11] Many of this latter group of cases involved complex and lengthy trials. *See*, *e.g.*, *Locascio*, 357 F. Supp. 2d at 545 (case involved twenty counts and eleven defendants); *United States v. Maisonet*, 1998 WL 355414 at *4 ("a trial of all 19 defendants will likely last several months and present numerous complications, and therefore I find that severance is warranted in this case in light of the principles enunciated in *United States v. Casamento*"); *Bellomo*, 954 F. Supp. at 635 (original indictment charged sixty counts against 19 defendants).

introduce is better understood – in both its qualitative and quantitative implications – by both the defendants and the trial court.

To the extent Boon and Montgomery argue that their relationship to McAuley creates unfair prejudice warranting severance, I disagree. *See United States v. Spicer*, 2013 WL 871952, *4 (E.D.N.Y. 2013) (rejecting movant's argument that his "familial relationship with the leader of the enterprise, . . . who has been charged with various violent acts, including murder, would result in him suffering 'spillover prejudice'"); *United States v. Stone*, 2006 WL 436012, *5 (E.D.N.Y, 2006) (fact that movant was brother of co-defendant alleged to be one of the leaders of the enterprise did not cause "specific prejudice[;] . . . [t]he Court is confident that a jury could discern between the acts of one brother and the acts of another"); *United States v. Bellomo*, 263 F. Supp. 2d 561, 577 (E.D.N.Y. 2003) ("[a]n indictment which names as defendants a father and a son is not unique[;] . . . [r]esearch has revealed no case in which a severance was granted by virtue of that relationship"). Likewise unavailing are Boon's *Casamento* ("mega-trial") concerns considering the relatively limited number of defendants and charges in this case. Finally, with respect to Boon's and Montgomery's concerns over spillover prejudice that may result from the possible admission of evidence of co-defendants' statements or prior bad acts, such arguments are simply too speculative to justify severance at this stage; so too is Boon's concern that she may wish to call her husband as a witness at trial. Accordingly, I recommend that the narcotics defendants' motions for severance be denied without prejudice to renewal before the trial court at or before the pretrial conference.

## <u>CONCLUSION</u>

For the reasons stated above, I recommend that the district court deny the misjoinder and severance motions filed by Moran, Tata, Stone, Boon, Montgomery and Tyler. (Docket ## 209, 211, 212, 277, 312, 337, 345).

_s/Marian W. Payson_
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
   November   26  , 2013

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[12]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

_s/Marian W. Payson_____
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
    November __26__, 2013

---

[12] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).